1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RUSSELL A. RUNNELS,

            Plaintiff,

    v.

CITY OF VANCOUVER, a municipal
entity; the VANCOUVER POLICE
DEPARTMENT; and RYAN JUNKER,

            Defendants.

CASE NO. C10-5913BHS

ORDER GRANTING
DEFENDANTS' MOTION
PARTIAL SUMMARY
JUDGMENT

This matter comes before the Court on the motion of Defendants City of
Vancouver ("City"), Vancouver Police Department ("VPD"), and Ryan Junker ("Junker")
(collectively "Defendants") for partial summary judgment. Dkt. 20. The Court has
considered the pleadings filed in support of and in opposition to the motion and the
remainder of the file and hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On February 24, 2011, Defendants moved for partial summary judgment on all of
Plaintiff Russell A. Runnels's ("Runnels") claims with the exception of his cause of
action brought under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §
12131, et seq. ("ADA"). Dkt. 20. On March 11, 2011, Runnels responded (Dkt. 25) and

on March 18, 2011, Defendants replied (Dkt. 27). On March 22, 2011, Runnels filed a motion for extension of time to file his declaration in support of opposition to the motion for partial summary judgment. Dkt. 29. Also on March 22, 2011, Runnels filed a motion for leave to file an amended complaint. Dkt. 30. On April 1, 2011, the Court signed an order on the parties' stipulation in which they agreed to dismissal of Runnels's negligence claim and to his request to file his second amended complaint, acknowledging that the Court's decision on Defendants' motion for partial summary judgment would govern what claims remain at issue in the amended complaint. Dkt. 35. On April 6, 2011, Defendants filed a revised response to Runnels's motion for an extension of time to file his declaration (Dkt. 37) and on April 7, 2011, Runnels replied. (Dkt. 39).

## II. FACTUAL BACKGROUND

On May 1, 2008, Clark Regional Emergency Services agency received a report of a traffic hazard in which an older, brown Buick was stalled in the southbound left turn lane on East Fourth Plain Boulevard in Vancouver, Washington. Dkts. 21 at 8 & 29-1 at 2. Junker, a VPD officer, was dispatched to the disabled vehicle. Dkt. 21 at 5. The other occupants of the vehicle included passengers Runnels and Joseph Stewart, and the driver, Branda Fisher ("Fisher"). Dkts. 21 at 8 & 29-1 at 4. Runnels is an African-American male with a physical disability he characterizes as "'webbed' arms – i.e. skin from [his] upper torso is attached to [his] arms making a 'webbed' effect – that physically restricts [his] ability to raise, bend or move [his] arms, or to put [his] arms fully behind [his] back." Dkt. 29-1 at 2.

According to Runnels, upon arrival at the scene, "Junker demanded that each person in the car give his or her name and produce identification," and then proceeded to run a "criminal records check on each individual in the car." Dkt. 29-1 at 1. Junker does not specify when he requested the passengers' identification. Dkt. 21 at 5-6.

After making contact with the driver, Junker reported that "[a] records check of her name showed she was the protected person in a no contact order with a black male listed as a respondent." Dkt. 21 at 6. Junker also reported "that there was a black male seated in the rear of the vehicle who identified himself as Russell RUNNELS." *Id*. This was "not the same name as on the no contact order, however RUNNELS did not have any identification on him or a way to verify it was his true name." *Id.* Junker then ran a records check to confirm Runnels's identity. *Id*. Junker's record check confirmed that Runnels was not the name on the no contact order but showed an outstanding misdemeanor warrant for Runnels's arrest. *Id.*; *see also* Dkt. 29-1 at 2.

Pursuant to the warrant, Junker placed Runnels under arrest. Dkts. 21 at 6 & 29-1 at 3. According to Junker, "Runnels was taken into custody without incident and transported to Clark County [jail]." Dkt. 21 at 6. Runnels alleges that Junker forcibly handcuffed him and that he sustained pain and injury as a result of Junker's attempt to handcuff him behind his back. Dkt. 29-1 at 3-4.  The Court notes that the parties' factual dispute over the manner in which Runnels's arrest took place is not a question of material fact relevant to the instant motion.

### III. DISCUSSION

As an initial matter, because the Court concludes that, even considering as evidence the declaration submitted by Runnels in support of his opposition to Defendants' motion (Dkt. 29-1), Defendants' motion for partial summary judgment should be granted. The Court also concludes that Runnels's motion to file his declaration should also be granted.

In the instant motion, Defendants move the court to grant summary judgment and dismiss the following: (1) Junker's alleged violation of 42 U.S.C. § 1983; (2) the City's alleged violation of § 1983; and (3) all of the claims alleged against VPD.  Defendants' motion also sought summary judgment on Runnels's negligence claim, which he has not

included in his second amended complaint and therefore the Court need not address such claim.  *See* Dkts. 35 & 40.

**A.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec.*

*Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    Junker's Liability Under § 1983**

Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . .

42 U.S.C. § 1983. Thus, a right of action under § 1983 must be premised on a constitutional violation or deprivation of rights under federal law. *See Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (citing *Johnson v. Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997) ("To state a claim for relief under section 1983, the Plaintiffs must plead two essential elements: (1) that the Defendants acted under color of state law; and (2) that the [d]efendants caused them to be deprived of a right secured by the Constitution and laws of the United States." (internal citation omitted)).

Junker argues that qualified immunity bars Runnels's § 1983 claim against him because Runnels's allegation that Junker violated the Fourth Amendment by running a records check was not a clearly established constitutional violation at the time the events occurred.  Dkt. 20 at 4-14.  Runnels maintains that Junker is not entitled to qualified immunity because Junker did in fact violate Runnels's constitutional rights under the Fourth Amendment and that there are disputed facts surrounding Junker's treatment of Runnels, which should preclude summary judgment. Dkt. 25 at 26.

**1.    Doctrine of Qualified Immunity**

"Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (internal quotation marks

omitted). Courts "evaluate a defendant's qualified immunity defense using a two-step inquiry." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009). It is within a court's "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* (quoting *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009)). The two prongs are (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right, and (2) whether the right was clearly established." *Ramirez*, 560 F.3d at 1020 (quoting *Saucier*, 533 U.S. at 201-202).

### 2.    Violation of Runnels's Constitutional Rights

#### a.    Freedom from Unlawful Search and Seizure

Runnels argues that Junker violated his right to be free from warrantless search and seizure under the Fourth Amendment to the United States Constitution. Dkt. 26 at 9. Specifically, Runnels argues the seizure was unlawful because Junker did not have probable cause to seize him and because the seizure was objectively unreasonable. Dkt. 25 at 26.

#### i.    Unlawful Seizure

Junker concedes that Runnels was seized. Dkt. 20 at 11. However, Junker argues that his records check was not an independent seizure. *Id.* Runnels maintains that the records check was a seizure and that it was done unlawfully and without probable cause. Dkt. 25 at 11-12. Additionally, Runnels asserts that there was no traffic stop because Junker was dispatched to a disabled auto. Dkt. 25 at 13.

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Temporary detention of individuals during an automobile stop by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within

ORDER - 6

the meaning of this provision. *Whren v. United States*, 517 U.S. 806, 810-811 (1996) (internal citations omitted). Additionally, according to the United States Supreme Court, when a police officer makes a traffic stop, a passenger in the car, like the driver, is seized for Fourth Amendment purposes. *Brendlin v. California,* 551 U.S. 249, 255 (2007).

Because an automobile stop is a seizure under the Fourth Amendment, it is also "subject to the constitutional imperative that it not be unreasonable under the circumstances." *Whren*, 517 U.S. at 811. The constitutional reasonableness of traffic stops does not depend on the actual motivations of the individual officers involved. *Id.* at 813.  Further, an automobile stop "is reasonable where the police have probable cause to believe that a *traffic violation has occurred." Id.* at 810 (emphasis added).

To the extent that Runnels is asserting that this incident was not a traffic stop, such assertion is unsupported by any legal authority and the Court finds that such argument is without merit. Dkts. 25 at 9-13 & 29-1.  It is undisputed that Junker was investigating a stalled vehicle which constitutes a traffic offense under Washington law and Runnels has presented no authority for the Court to conclude that such an investigation is treated any differently due to the fact that he was called to the scene.

As to Runnels's argument "that the evidence supports the finding that the seizure was unlawful" (Dkt. 25 at 11), the Court disagrees. In Washington, police officers act under statutory authority to enforce state laws. *See* RCW 10.93.070. Stopping, standing or parking in an intersection is prohibited by RCW 46.61.570(1)(a)(iii). Runnels concedes that the vehicle was stalled at or near an intersection. Dkts. 7 at 3 & 25 at 2, 29-1 at 2. In the course of his duties as a VPD officer, Junker was dispatched to investigate the disabled auto (*see* Dkt. 21 at 5) which, when it was reported, was categorized as "Traf Hazard." *Id.* at 8. These facts are sufficient for the Court to conclude that the seizure was reasonable and lawful under the Fourth Amendment as

1   Junker had probable cause to believe that a traffic violation had occurred. *See Whren*,

2   517 U.S. at 811.

### ii.      Unreasonable Search

4        Runnels also argues that Junker's request for identification and subsequent

5   records check constituted an unreasonable government search, violated his expectation

6   of privacy and thus violated his Fourth Amendment rights. See Dkt. 25 at 13- 15. Junker

7   argues that he did not violate Runnels's Fourth Amendment rights by demanding

8   identification or by running a records check of Runnels's name.  Dkt. 20 at 10-11.

9        The Supreme Court has held that police may ask persons, who have legitimately

10  been stopped, for identification without conducting a Fourth Amendment search or

11  seizure. *See Hiibel v. Sixth Judicial Dist. Ct. of Nev., Humboldt County*, 542 U.S. 177,

12  185 (2004) (stating that "[i]n the ordinary course [of a police investigation] a police

13  officer is free to ask a person for identification without implicating the Fourth

14  Amendment.") Thus, police questioning, by itself, is unlikely to result in a Fourth

15  Amendment violation. *INS v. Delgado*, 466 U.S. 210, 216 (1984). Even if the officer's

16  "actions during [a] traffic stop implicate the Fourth Amendment, they do not

17  [necessarily] violate it." *U.S. v. Diaz-Castaneda*, 494 F.3d 1146, 1153 (9th Cir. 2007)

18  (quoting *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004) (stating that "the

19  law has become well established that during a routine traffic stop, an officer may request

20  a driver's license and . . . run a computer check")). As Runnels points out:

> The touchstone of the Fourth Amendment is reasonableness, and the
> reasonableness of a search is determined "by assessing, on the one hand, the
> degree to which it intrudes upon an individual's privacy and, on the other,
> the degree to which it is needed for the promotion of legitimate
> governmental interests."

25  *United States v. Knights,* 534 U.S. 112, 118-119 (2001) (quoting *Wyoming v. Houghton*,

26  526 U.S. 295, 300 (1999)).

1

Runnels contends that "Junker had no legitimate criminal justice purpose in

2

running Runnels's name in a database of records." Dkt. 25 at 15. Junker reported that his

3

records check indicated that the driver was

4
5
6

> the protected person in a no contact order with a black male listed as the respondent. There was a black male seated in the rear of the vehicle who identified himself as Russell Runnels. It was not the same name as on the no contact order, however, Runnels did not have any identification on him.

7

Dkt. 21 at 6. Junker then ran a records check to confirm Runnels's identity. Dkts. 21 at 6

8

& 25 at 3.

9

In weighing the government's interest against the intrusion to Runnels's privacy

10

the Court notes that Junker has a duty to enforce a protective order. *See* RCW

11

10.31.100(2)(a).[1] Further, the legislature specifically intended this statute to: "[i]ncrease

12

the safety afforded to individuals who seek protection of public and private agencies."

13

*Id*. Here, Junker sought confirmation that Runnels was not the party named on Fisher's

14

protective order. *See* Dkt. 21 at 6 (reporting "Runnels was not the respondent in the

15

order").

16

Runnels's reliance on *Ramirez v. City of Buena Park,* 560 F.3d 1012 (9th Cir.

17

2009), and *Bennett v. City of Eastpointe,* 410 F. 3d 810, 822 (6th Cir. 2005), to support

18

his argument that the records search was improper is misplaced because the intrusion at

19

issue in those cases was the reasonableness of pat-down searches by the officers, that is,

20

the reasonableness of physical intrusions. Here, there was no physical intrusion but

21

rather a routine confirmation of identities.

22

23

Likewise, Runnels's reliance on cases lacking probable cause for property

24

searches does not support Runnels's allegation that Junker's record check was an

25
26
27
28

[1] RCW 10.31.100(2)(a) provides that "[a] police officer **shall** arrest and take into custody, . . . a person without a warrant when the officer has probable cause to believe that: (a) An order has been issued of which the person has knowledge under RCW 26.44.063, or chapter 7.90, 10.99, 26.09, 26.10, 26.26, 26.50, or 74.34 RCW restraining the person and the person has violated the terms of the order . . . . (Emphasis added.)

unlawful search. Dkt. 25 at 14-15; *see also United States v. Jacobsen*, 466 U.S. 109, 114 (1984); *Unites States v. Angulo-Fernandez,* 53 F.3d 1177, 1180 (10th Cir. 1995). Runnels's property was not searched. Furthermore, Runnels offers no authority indicating that the type of records check at issue is unlawful. Dkt. 25 at 13-15. Instead, citing to *United States v. McManus*, 70 F. 3d 990 (8th Cir. 1995), Runnels validates the proposition that data bases used "as part of an investigation" have a legitimate criminal justice purpose. Dkt. 25 at 15.

Here, the government's interests in enforcing and investigating no contact orders as well as in protecting the safety of protected persons are legitimate criminal justice purposes. Runnels concedes that he had no identification (Dkt. 25 at 3), and therefore, the Court concludes that the records check Junker conducted to confirm Runnels's identity and to differentiate him from the identity of the male listed on the protective order was objectively reasonable in that the government's interest outweighed Runnels's privacy interest.

**b.    Violation of the ADA**

Runnels maintains that "[a]lthough Junker cannot be individually liable under the ADA for his treatment of Runnels, he can face liability under Section 1983 for depriving Runnels of his federal rights including his right to non-discriminatory treatment under Title II of the ADA." Dkt. 25 at 21. Junker argues that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in h[is] individual capacity to vindicate rights created by Title II of the ADA." Dkt. 27 at 8 (quoting *Vinson v. Thomas* 288 F.3d 1145, 1156 (9th Cir. 2002)).

In *Vinson v. Thomas*, the Ninth Circuit "considered whether a public official can be sued in his or her individual capacity under 42 U.S.C. §1 983 predicated upon alleged violations of the ADA or the Rehabilitation Act." 288 F.3d at 1155. In its analysis, the *Vinson* court stated:

1    Section 1983 does not confer rights, but instead allows individuals to
2    enforce rights contained in the United States Constitution and defined by
     federal law. *See Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir.
3    1995). An alleged violation of federal law may not be vindicated under §
     1983, however, where: "(1) the statute does not create an enforceable right,
4    privilege, or immunity, or (2) Congress has foreclosed citizen enforcement
     in the enactment itself, either explicitly, or implicitly by imbuing it with its
5    own comprehensive remedial scheme." *Buckley*, 66 F.3d at 190 (citing
     *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)). "[A]
6    comprehensive remedial scheme for the enforcement of a statutory right
     creates a presumption that Congress intended to foreclose resort to more
7    general remedial schemes to vindicate that right." *Lollar v. Baker*, 196 F.3d
     603, 609 (5th Cir. 1999) (citing *Middlesex County Sewerage Auth. v.
8    National Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981)).

9    *Id*. The Ninth Circuit held as a matter of law that "a plaintiff cannot bring an action

10   under § 1983 against a state official in her individual capacity to vindicate rights created

11   by Title II of the ADA."  *Id*. at 1156.

12        Therefore, the Court concludes that Runnels's argument that Junker can face

13   liability under § 1983 for the deprivation of rights secured by the ADA is without merit.

14        **3.    Clearly Established Law**

15        Even if the Court were to conclude that, based on the facts as alleged by Runnels,

16   Junker may have violated Runnels's Fourth Amendment rights, it was not a violation that

17   was clearly established at the time the events occurred. Thus, even if the Court were to

18   conclude that the government's interests in running a records check on Runnels's name

19   did not outweigh his right to privacy, and therefore a violation of his Fourth Amendment

20   rights may have occurred, such violation was not clearly established based on the case

21   law as discussed above. In other words, under the doctrine of qualified immunity, the

22   Court may not hold Junker liable under § 1983 for a violation of Runnel's rights that was

23   not clearly established at the time the violation took place. *See Ramirez*, 560 F.3d at

24   1020. Therefore, because the case law, as discussed above, indicates that Junker did not

25   even violate Runnels's rights, such a violation cannot be argued as clearly established

26   under the law. Therefore, Junker is entitled to qualified immunity from Runnels's § 1983

28

claim based on a violation of his Fourth Amendment rights because such violation, if any, was not clearly established at the time the events at issue took place.

**C.    The City's Liability Under 42 U.S.C. § 1983**

The City moves the Court to dismiss Runnels's § 1983 claim against it because "as a threshold matter, a party seeking recovery under Section 1983 against a municipality cannot proceed on a theory of respondeat superior." Dkt. 20 at 14. Additionally, the City argues that Runnels has failed to show that the City's policy was unconstitutional or provide "proof of a direct causal link between the municipal action and the deprivation of federal rights." Dkt. 27 at 10. Runnels argues that the City "demonstrated deliberate indifference to the rights of persons with disabilities such as Runnels." Dkt. 25 at 23.

As an initial matter, the Court notes that the Supreme Court has rejected the contention that only unconstitutional policies are actionable under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Thus, the City's argument on this ground fails.  In addition, in *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694-95 (1978), the Supreme Court held that a municipality can be held liable under § 1983 only when the municipality itself causes the constitutional violation and that respondeat superior liability will not attach under § 1983 in municipality liability claims. Thus, the Court concludes that to the extent that the City's liability is based on respondeat superior, Runnels's claim fails as a matter of law.

**1.    Inadequate Training or Supervision**

In addition to his respondeat superior theory of liability, Runnels maintains that the City is liable because it "inadequately trained or supervised its police officers, this failure to train or supervise was a city policy, one of the officers [allegedly] violated [Runnels's] constitutional rights, and the violation of [Runnels's] rights was caused by that [c]ity policy." Dkt. 25 at 22. The City maintains that Runnels must show proof of "a

direct causal link between the municipal action and the deprivation of federal rights" and that he has failed to do so. Dkt. 27 at 10.

A municipality may be held liable for damages under § 1983 where the plaintiff identifies a "municipal policy or custom that caused the plaintiff's injury." *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 403 (1997). Similarly, a plaintiff can prevail on a *Monell* claim against a city only by identifying "a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered." *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (citing *Monell*, 436 U.S. at 694-95). Moreover, it is not enough to identify a city policy or conduct attributable to the city. "[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of County Comm'rs*, 520 U.S. at 403.

The Supreme Court has also held that a municipality may be liable for due process violations when it fails to train its employees. *City of Canton v. Harris*, 489 U.S. 378, 380 (1989). However, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id*. at 388. Therefore, to succeed in such a case, a plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.

### a. Deliberate Indifference

Runnels argues that the City "was deliberately indifferent to the needs and federal rights of persons with disabilities such as Runnels." Dkt. 25 at 24. Specifically, Runnels points to Section 12.09.00 in the VPD manual as evidence of this indifference. Dkts. 25

at 23 & 26 at 5. Runnels maintains that the policy manual demonstrates deliberate

indifference to persons with disabilities because "[t]he VPD Manual contains nothing

describing the responsibility of VPD officers to reasonably accommodate the disability

of an arrestee or even any training or required awareness in the ADA generally." Dkt. 25

at 23. Additionally, Runnels contends that liability is warranted because "[n]either that

section nor any other indicates that a police officer should carefully handcuff a person

whose disability makes it impossible to be handcuffed behind the back without injury"

and that there is no other evidence to contradict this assertion. Dkt. 25 at 23.

To survive summary judgment Runnels was required to demonstrate that the

policymakers of the City can reasonably be said to have been deliberately indifferent to

the need at issue. *See City of Canton*, 489 U.S. at 390.  In addition, as pointed out by

Runnels, to establish a deliberately indifferent policy via a failure to train "a plaintiff

must present some evidence that the city knew or should have known of a need to train

in a particular area and the municipality deliberately chose not to take any action." Dkt.

25 at 23 (relying on *Schorr v. Borough of Lemoyne*, 243 F. Supp. 2d 232 (M.D. Pa.

2003)).

However, rather than supporting his position, the VPD policy that Runnels relies

on undermines his assertions.  The policy itself negates the proposition that the City was

deliberately indifferent in stating:

> Whenever an officer has a person in custody to be transported, that person
> shall be handcuffed with the hands behind the back. *Handcuffs may be
> placed in front during exceptional circumstances such as prisoner injury
> or physical characteristics which make handcuffing behind the back
> impractical.* The handcuffs will be double-locked to prevent unnecessary
> injury and escape.

Dkt. 26 at 5 (emphasis added). The policy specifically includes an exception in the

handcuffing procedure for injury or physical characteristics. While Runnels is correct

that the policy does not say "that a police officer should carefully handcuff a person

whose disability makes it impossible to be handcuffed behind the back without injury," Runnels has cited no authority to establish that this specificity is required or provided any evidence that the allowance for accommodation in the handcuffing procedure as written amounts to deliberate indifference. Dkt. 25 at 21-24.

Additionally, Runnels provides no evidence to support his allegations of insufficient training. Dkts. 26 at 5 and 29-1. Thus, there is nothing before the Court to establish that the City knew of or should have known of the need for more training, let alone that the City deliberately chose not to act.

Therefore, the Court concludes that Runnels's claim of deliberate indifference fails because Runnels has failed to submit any evidence to demonstrate that the need for more or different training by the City is at all obvious or that any inadequacy was likely to result in the violation of constitutional rights. *City of Canton,* 489 U.S. at 388.

### b.      Causal Link

Moreover, while Runnels does identify a city policy regarding handcuffing (Dkt. 26 at 5), he fails to provide any evidence that demonstrates how this policy caused a violation of his rights. It is not enough to just identify a city policy; a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of County Comm'rs*, 520 U.S. at 403. The absence of information about the ADA in the VPD manual is insufficient to establish that this policy was the "moving force" behind an alleged constitutional violation. *Galen*, 477 F.3d at 667. Because Runnels has not established the requisite degree of culpability or proof of a causal link between the City's policy and the alleged deprivation of his federal rights, the Court concludes that this argument also fails.

### 2.      Conclusion

Therefore, because Runnels has failed to provide proof that a municipal policy or custom caused his alleged injury or that the City's police training amounted to deliberate

indifference, the Court concludes that Defendants are entitled to summary judgment on Runnels's § 1983 claim against the City.

**D.     VPD's Amenability to Suit**

VPD argues that Runnels's claims against it are improper because "police departments in Washington do not have the capacity to be sued." Dkt. 20 at 15-16. Runnels argues that Washington law does not support this proposition. Dkt. 25.

A local government unit or municipality can be sued as a "person" under § 1983. *Monell*, 436 U.S. 658 at 691. However, many circuits do not consider police departments suable entities separate from the municipality itself. *See West v. Waymire,* 114 F.3d 646, 647 (7th Cir.1997); *Ricketts v. City of Hartford*, 74 F.3d 1397, 1400 n. 1 (2nd Cir. 1996); *Dean v. Barber*, 951 F.2d 1210, 1214-15 (11th Cir.1992). The Ninth Circuit has not explicitly adopted this view, despite a concurring opinion in *United States v. Kama*, 394 F.3d 1236, 1240 (9th Cir. 2005), stating that "municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983." Instead, the Ninth Circuit has determined that state law controls the issue of whether a police department may be sued as a separate entity apart from a city. *Streit v. County of Los Angeles*, 236 F.3d 552, 565 (9th Cir. 2001) (quoting *Shaw v. State of California Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 604 (9th Cir.1986) ("Under [R]ule 17(b) of the Federal Rules of Civil Procedure, the Police Department's capacity to be sued in federal court is to be determined by the law of" the state in which the suit is brought).

Washington courts agree that city or county departments are not legal entities subject to suit. *See City of Seattle v. Dutton*, 147 Wash. 224, 226, 265 P. 729 (1928) (City of Seattle liable for acts of negligence committed by Department of Parks because the department "is not an entity separate and apart from the city."); *Nolan v. Snohomish County*, 59 Wn. App. 876, 883, (1990) ("in a legal action involving a county, the county itself is the only legal entity capable of suing and being sued"); *see also Moreno-Garcia*

1    *v. Yakima Police Dept., 2010 WL 2803247, *2* (E.D. Wash. 2010); *Burton v. Hale*, 2008

2    WL 623718, *2 (W.D. Wash. 2008).

3         Here, Runnels's analysis of Washington case law is flawed. *See* Dkt. 25 at 24.

4    First, his reliance on *Koenig v. City of Des Moines*, 158 Wn.2d 173, 177 (2006), is

5    misplaced because while that case involved obtaining records from both the city and the

6    police department, the police department was not sued as an entity independent from the

7    city. Next, in arguing that *Stiffarm v. City of Pullman Police Dep't*, 2007 WL 870343, at

8    *6 (E.D. Wash. 2007) does not stand for the proposition that the police department is an

9    improper defendant (Dkt. 25 at 24), Runnels overlooks the court's unambiguous

10   language in its order. In *Stiffarm*, the court's order at the end of the opinion specifically

11   found that the Pullman Police Department did not have the capacity to be sued. *Id*.

12        The Court adopts the reasoning in *Stiffarm* and concludes that because current

13   Washington case law indicates that a police department is not a legal entity with the

14   capacity to be sued, Defendants are entitled to summary judgment of Runnels's claims

15   against VPD. The Court notes that any claims Runnels has against VPD can be brought

16   against the City as the proper entity with the capacity to be sued.  *See Nolan*, 59 Wn.

17   App. at 883.

18
                                   **IV. ORDER**

19        Therefore, it is hereby **ORDERED** as follows:

20        (1)    Runnels's motion for extension of time to file his declaration (Dkt. 29) is

21   **GRANTED**;

22        (2)    Defendants' motion for partial summary judgment (Dkt. 20) is

23   **GRANTED** as discussed herein;

24        (3)    Runnels's § 1983 claims against Junker based on violations of the Fourth

25   Amendment and the ADA are **DISMISSED with prejudice**;

26

27

28

1    (4)    Runnels's § 1983 claims against the City are **DISMISSED with**

2    **prejudice**; and

3    (5)    Runnels's claims against VPD are **DISMISSED with prejudice**.

4    DATED this 27th day of April, 2011.

5

6

7    BENJAMIN H. SETTLE
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER - 18